# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES L. DALTON, JR.,     )
     )
     Plaintiff,     )
     )
     vs.     )     **CIVIL CASE NO. 08-28-WDS-PMF**
     )
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,     )
     )
     Defendant.     )

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Plaintiff, Charles Dalton Jr., seeks judicial review of a final decision of the Commissioner of Social Security denying his May, 2005, applications for disability benefits and supplemental security income. An Administrative Law Judge (ALJ) decided that Dalton was not disabled. That decision became final when the Appeals Council declined to review the ALJ's decision. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be

followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id.*

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.* However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## I.    Background

The ALJ reviewed evidence showing that plaintiff has been diagnosed with and treated for numerous medical ailments during the relevant period of time, including human immunodeficiency virus(HIV), hepatitis B, cirrhosis of the liver, scoliosis, arthritis, major depression, an adjustment disorder, and a personality disorder. The records relate multiple symptoms, such as fatigue, night sweats, abdominal pain, skin rashes, body aches, diarrhea, dizziness, mouth sores, nausea, vomiting, weakness, and headaches. Plaintiff's ailments have been treated with medication and therapy on an outpatient basis. He has not received inpatient treatment or emergent care.

The ALJ evaluated plaintiff's application through Step 5 of the sequential evaluation and decided that plaintiff had severe impairments that did not meet or equal a listed impairment. The ALJ further found that plaintiff retained the ability to perform a range of light work but could not perform the jobs he had performed in the past. At the last step of the evaluation, the ALJ applied medical vocational rule 202.21, which directed a finding of "not disabled."

## II.     Step 3 Determination

Plaintiff challenges the ALJ's decision at Step 3 that his condition did not meet the criteria for Listing 14.08. Defendant responds that plaintiff did not submit documentation of the disease process required by that Listing.

The Listings describe impairments that are severe enough for a person to automatically qualify for benefits and are organized according to the particular body system that is affected. Listing 14 sets forth the criteria for disorders of the immune system causing dysfunction in one or more components; in particular, HIV infections characterized by increased susceptibility to opportunistic infections, cancers, or other conditions. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 14.00A. The relevant portion of Listing 14.08 provides as follows:

14.08 Human immunodeficiency virus (HIV) infection. With documentation as described in 14.00F and . . .

    D. Viral infections:

        1. Cytomegalovirus disease (documented as described in 14.00F3b(ii)) at a site other than the liver, spleen or lymph nodes.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 14.08D(1). Plaintiff had the burden to prove that his impairments satisfied all the listing criteria. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir.1999).

The parties agree that plaintiff's impairments satisfied the initial criterion of a documented HIV infection. The issue is whether plaintiff also demonstrated that he suffered from a secondary viral infection, specifically, cytomegalovirus (CMV) disease at a site other than the liver, spleen, or lymph nodes. On this point, the regulations direct attention to section 14.00F3b(ii), which provides, in pertinent part:

> (ii) Documentation of Cytomegalovirus (CMV) disease (14.08D) may present special problems because definitive diagnosis requires . . . identification of viral inclusion bodies or a positive culture from the affected organ and the absence of any other infectious agent likely to be causing the disease. A positive serology test does not establish a definitive diagnosis of CMV disease, but does offer supportive evidence of a presumptive diagnosis of CMV disease. Other clinical findings that support a presumptive diagnosis of CMV may include: Fever, urinary culture positive for CMV, and CD4 count below 200. A clear response to anti-CMV therapy also supports a diagnosis.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 14.00F3b(ii).

Plaintiff claims that he has CMV disease, pointing to a laboratory test showing a positive result for the cytomegalovirus antibody in November, 2005 (R. 484). Respondent maintains that this report describes the result of a serology test and does not establish a definitive diagnosis of CMV disease.

The ALJ's Step 3 decision is adequately supported by the record. The report in question

appears to interpret a serology test of plaintiff's blood or urine, ordered by the physician who monitored plaintiff's HIV treatment (R. 487, 488, 524). While the test produced a "high" value of 12.9, no records indicate that the result led Dr. Fleenor or any other physician to diagnose CMV disease. Rather, the result was recorded as a baseline indicator (R. 450, 445, 452, 453). Also, the record does not show that CMV disease – if present and diagnosed – was located at a site other than the liver, spleen, or lymph nodes.

### III.    Credibility Assessment

Plaintiff also challenges the ALJ's credibility assessment on the basis that it is insufficient and/or based on erroneous remarks regarding evidence. Respondent argues that substantial evidence supports the ALJ's credibility assessment.

During the relevant period, plaintiff's medical ailments and symptoms were treated on an out-patient basis at a number of medical facilities in Seattle, Washington (Harborview Medical Center facilities, MDSI Physician Group, Empowerment Institute Learning Center); Paducah, Kentucky (Heartland Cares, Heartland Clinic); and Cairo, Illinois (Delta Center, Community Health Services). On occasion, plaintiff received outpatient care on an urgent basis; however, he was not hospitalized for treatment and did not frequently visit hospital emergency rooms (R. 261- 510).

In September, 2002, plaintiff prepared a symptoms questionnaire, reporting that he cleaned his living area and did laundry weekly (R. 63A25).

In December, 2002, plaintiff prepared a report stating that he lived alone, prepared his own meals, shopped one day each month, and performed housework. He described his hobbies as drawing, painting, cooking, sewing, and reading, indicating that he did not do much of late (R. 69-71).

In November, 2006, plaintiff responded to questions posed at a hearing. He testified that he

lived with his parents, who took care of all housework and shopping (R. 528). He estimated that he could lift about ten pounds and described symptoms of fatigue, pain, depression, diarrhea, and medication side effects. He explained that his symptoms kept him from working and occasionally kept him from functioning (R. 526, 528, 533-34). While he had enjoyed art as a hobby in the past, he had not created artwork lately because of his poor health. He did not visit neighbors, friends, or relatives; did not attend church or watch movies; did not own or care for animals; did not fish, hunt, or swim; and did not attend athletic events, take vacations, or participate in club activities. He had given up volleyball, tennis, and walking (R. 528-29, 531).

The ALJ decided that plaintiff experienced the symptoms he reported but that his description of the intensity, persistence, and limiting effects of those symptoms was not entirely credible (R. 20). In explaining this assessment, the ALJ pointed to medical evidence, daily activities, and medication side effects (R. 21, 22). The ALJ's credibility finding will be upheld unless it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

<u>Medical Evidence</u>. Plaintiff argues that the ALJ improperly relied on the fact that he had not received medical care in a hospital setting. Defendant suggests that the ALJ's partial reliance on this factor is supported by reason and regulations.

When the ALJ explained his assessment of plaintiff's credibility, he repeatedly pointed to the fact that plaintiff had not required hospitalization or frequent treatment in emergency rooms (R. 20-22).

Plaintiff's history of medical treatment is fair game in assessing credibility. Social Security Ruling 96-7P (requiring consideration of the entire case record). Hence, the ALJ did not err by *considering* plaintiff's treatment history. However, ALJs must connect the evidence considered to their conclusions through strands of logic. *See Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

Although hospital patients frequently have severe symptoms, the absence of hospitalization does not rationally support the inference that the symptoms are not severe. Many individuals receive outpatient treatment for debilitating symptoms. This aspect of the ALJ's credibility assessment is not based on logic and is patently wrong.

Defendant suggests that the ALJ determined that plaintiff's testimony was not consistent with medical records showing that his mental ailments improved with treatment. That rationale cannot be gleaned from the ALJ's discussion, which includes the following remarks: "Progress notes indicate the claimant is significantly limited in his ability to maintain work on a sustained basis due to his chronic symptoms. . . .[t]he objective evidence further establishes a history of progressive depression and anxiety " (R. 20, 21). These comments indicate that the severity of plaintiff's symptoms is well-supported by objective medical evidence and treatment records.

Daily Activities. Plaintiff argues that the ALJ mischaracterized and drew improper inferences from evidence describing his daily activities. Defendant responds that the ALJ might have logically perceived inconsistencies in this evidence and determined that the inconsistencies were not adequately explained by the lapse of time.

The ALJ did not compare plaintiff's 2002 statements with his 2006 statements or base his assessment on unexplained discrepancies.[1] Rather, the ALJ singled out aspects of the December, 2002, report, finding that it "clearly" showed that plaintiff was "able to engage in some type of unskilled light work activity" (R. 22).

ALJs may not discuss only the evidence which favors their conclusions. *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). Moreover, evidence of sporadic physical activities does

---

[1] The task of a reviewing court is to evaluate the rationale reported in the decision. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

not support a finding that a claimant can work eight-hour days for five days a week. *Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004). Evidence describing plaintiff's scant daily activities does not support the ALJ's adverse credibility assessment. This aspect of the ALJ's decision is also patently wrong.

## IV. Vocational Expert

Plaintiff also argues that the ALJ erred by failing to consult a vocational expert regarding the impact of nonexertional impairments on the occupational base. Respondent argues that vocational testimony was not required because (1) the ALJ properly discounted the credibility of plaintiff's testimony and (2) the ALJ found that plaintiff could perform substantially all of the exertional demands of light work.

The ALJ decided that plaintiff could perform a range of light work, restricted by nonexertional limitations, including a limited ability to understand, remember, and carry out detailed instructions, a limited ability to maintain attention and concentration for extended periods, a limited ability to interact appropriately with the public, a limited ability to accept instructions and respond appropriately to criticism from supervisors, and a limited ability to get along with co-workers or peers without distracting them (R. 18).

At Step 5, the ALJ relied on the "grid," a chart that classifies a claimant as disabled or not, based on residual functional capacity, which is based on strength, age, prior work experience, and education. Nonexertional impairments do not affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a(c)(1). Where nonexertional limitations might substantially reduce the range of work, use of the grid is inappropriate. In those instances, the ALJ must consult a vocational expert. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Whether a claimant's nonexertional impairments are severe enough to preclude use of the grid is a determination of fact

which will be upheld if there is evidence sufficient to "persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir.1986).

Defendant has not pointed to evidence that meets this standard. The ALJ should have sought advice from a vocational expert regarding plaintiff's ability to perform substantial numbers of occupations within the light range of work. *DeFrancesco v. Bowen*, 867 F.2d 1040, 1045 (7th Cir. 1989).

## V.    Conclusion

IT IS RECOMMENDED that the Commissioner's final decision denying Charles Dalton's applications for disability benefits and supplemental security income be REVERSED.

IT IS FURTHER RECOMMENDED that this case be REMANDED for further proceedings and a new decision. Judgment should enter pursuant to the fourth paragraph of 42 U.S.C. § 504(g). On remand, the ALJ should reconsider the credibility of plaintiff's testimony. If the sequential analysis proceeds to Step 5, the ALJ should consult a vocational expert regarding plaintiff's ability to perform other work.

**SUBMITTED:   September 10, 2008   .**

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**